# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAUREN MARTZ,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| vs | : | **NO.** |
| | : | |
| **TOWN OF BLOOMSBURG,** | : | |
| Defendant | : | **JURY TRIAL DEMANDED** |

## COMPLAINT

LAUREN MARTZ, by and through her counsel, the Law Offices of Peter J. Russo, P.C., submits the following Complaint:

## JURISDICTION

1. Jurisdiction is proper in this matter pursuant to the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951-963.

2. Jurisdiction is invoked pursuant to 28 U.S.C. §1331 which provides for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

3. This Court has jurisdiction over plaintiff's state-based claims pursuant to its supplemental jurisdiction as codified at 28 U.S.C. §1367.

4. Plaintiff has exhausted all administrative remedies, having filed timely complaints of sex and age discrimination with the Equal Employment Opportunity Commission [EEOC Charge No. 530-2020-01919] and dual-filed with the Pennsylvania Human Relations Commission pursuant to the Worksharing Agreement between the two agencies. She has taken all other steps necessary to bring this action before a court of appropriate jurisdiction.

5. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391.

## PARTIES

6. Plaintiff herein is LAUREN MARTZ, a female Pennsylvania resident with an address of 1081 Market Street, Bloomsburg, PA 17815.

7. Defendant, Town of Bloomsburg, is a governmental entity organized under the Constitution and laws of the Commonwealth of Pennsylvania and the Bloomsburg Municipal Code with offices at 301 East Second Street, Bloomsburg, Pennsylvania 17815.

8. The Town of Bloomsburg, through its Town Manager, Council and employees, is responsible for promulgating, executing and administering the customs, practices and policies including, but not limited to, those issues in this lawsuit by virtue of their application to LAUREN MARTZ and the Town of Bloomsburg.

## FACTS
## Organizational Structure

9. LAUREN MARTZ ("Lauren") first became employed with Defendant on November 11, 2012.

10. In 2016, Lauren was promoted to Town Manager/Secretary ("Town Manager"). At all times relevant to the facts in this Complaint, Lauren was the Town Manager for the Town of Bloomsburg.

11. Lauren's direct supervisor was the Bloomsburg Council which includes the Mayor of Bloomsburg.

12. During all times relevant to this complaint, there were seven (7) Council ("Council") Members: then Mayor William Kreisher; Vice President of Council Toni Bell; Council Members Fred Trump, James Huber, James Garman, Bonnie Crawford and Vince DeMelfi.

13. Pursuant to the Bloomsburg Municipal Code, the Mayor is directly responsible for the Police Department.

### Facts Relating To Plaintiff's Employment

14. Section 1-206 of the Bloomsburg Ordinance that details the job of duties of Lauren's position as Town Manager.

15. Lauren performed her duties from her office located in Bloomsburg Town Hall building.

16. Bloomsburg Town Hall was located at 301 East Second Street, Bloomsburg, Pennsylvania 17815.

17. Lauren had experienced positive reviews and feedback during her tenure with the Defendant.

18. Lauren had experienced no disciplinary actions against her during her tenure with the Defendant.

19. A special meeting of the Bloomsburg Council was called for and scheduled on July 29, 2019 at 7:00 pm.

20. During the July 29, 2019, special meeting of the Bloomsburg Council, a motion was made by Council Member Huber to amend the meeting agenda to discuss the employment status of the HR Director and the Town Manager.

21. During the July 29, 2019, special meeting of the Bloomsburg Council and pursuant to the amended meeting agenda, Lauren was terminated by a vote of the Council on July 29, 2019.

22. The Town terminated Lauren claiming poor performance and low morale of Town employees.

### COUNT - ONE
### DISPARATE TREATMENT UNDER
### TITLE VII OF THE CIVIL RIGHTS ACT BASED UPON GENDER

23. Paragraphs 1 through 22 are incorporated herein by reference as though set forth in their entirety.

24. Lauren's termination was purportedly based upon her poor performance and her creation of low morale among Town Employees.

25. Prior to Lauren's termination, she was never reprimanded or disciplined, verbally or in writing, about any issue, including, but not limited to:

    a. low employee morale;

    b. complaints from Town employees;

    c. the way Lauren dressed for work;

    d. time and attendance issues with Lauren; or

    e. Lauren's communication skills.

26. Rather than providing Lauren an opportunity to address the perceived issues Council had with her employment, Council terminated her employment.

27. Lauren was treated differently than male employees who violated Town rules and policies. Specifically:

    a. Brian Sitler – violated work rules on multiple occasions and was not terminated until he stopped coming to work;

    b. Dave Eyer – sexually harassed Lauren and tampered with another employee's work computer and equipment and was neither disciplined nor terminated;

    c. Ed Fegley – violated work rules repeatedly and was neither disciplined nor terminated;

d. Kyle Bauman – violated work rules and stole from Town and was never disciplined;

e. Leonard Rogutski, as Acting Chief of Police, publicly reprimanded Council and employees and was neither disciplined nor terminated;

f. Ron Russell – violated work rules on multiple occasions and was not terminated until he stopped coming to work;

g. Wayne Creasy - tampered with another employee's work computer and equipment and was neither disciplined nor terminated;

h. Ron Mull – a former Town Administrator that was caught with pornography during work hours and who had been sexually harassing female employees was not disciplined but rather given a paid suspension during investigation and given the opportunity to resign to protect his reputation.

i. Chief Gelgot - a former male employee who, unlike Lauren, was afforded ample time to correct performance deficiencies in lieu of termination.

28. The Council, through its inaction as described herein,[1] permitted the creation of a pattern of conduct whereby:

---

[1] The events described in the Complaint are a sample of the continuous and pervasive nature of the issues within the Town.

   a. Female employees are always in the wrong, regardless of facts;

   b. Female employees were treated differently than male employees;

   c. Male employees, whether equals or subordinates, are always considered right;

   d. Male employees were allowed to violate rules without consequences while female employees were not;

   e. Female employees were considered to be "uninformed," "wrong," "abrasive" and "difficult" by the Council Members; and

   f. Council Members would turn a blind eye to improper public meeting conduct of male employees and not support female employees in the same forum.

29. The adverse treatment experienced by Lauren was her termination from her position of Town Manager, which she had held for more than 3 years.

30. It is believed, therefore averred that Council's termination of Lauren for poor performance and low morale was a pretext in order to rid themselves of someone who engaging in the protected activity, i.e. advancing complaints on behalf of herself and other Town employees about discrimination, poor hiring practices and requiring the Council to work within the law.

31. Thus, Defendant willfully violated Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act and are liable to Lauren for monetary, compensatory and punitive damages, along with attorneys' fees and costs.

### COUNT - TWO
### HOSTILE WORK ENVIRONMENT SEX DISCRIMINATION UNDER PENNSYLVANIA HUMAN RELATIONS ACT and TITLE VII OF THE CIVIL RIGHTS ACT

32. Paragraphs 1 through 31 are incorporated herein by reference as though set forth in their entirety.

33. Lauren is a member of a protected class, sex - female.

34. Defendant is aware of Lauren's sex (female).

35. As more fully outlined herein, Lauren was subjected to discriminatory intimidation, ridicule, disparate treatment and insult because of her sex - female - during her employment with Defendant.

36. The discriminatory intimidation, ridicule, and insult were sufficiently severe or pervasive to alter the conditions of Lauren's employment and created an abusive working environment.

37. By harassing Lauren on the basis of her sex (female) and creating a hostile work environment, the Defendant intentionally discriminated against Lauren on the basis of her sex in violation of the Title VII of the Civil Rights Act.

38. Lauren suffered intentional discrimination because of her sex (female); the discrimination was severe or pervasive; the discrimination detrimentally affected her, including her termination; the discrimination would have detrimentally affected a reasonable person in like circumstances; and Defendant is liable which included, but was not limited to:

    a. Kreisher belittling women and talking over women at meetings while Kreisher did not belittle male employees or talk over male employees at meetings;

    b. Kreisher inappropriate comments about Lauren's body;

    c. Kreisher stating "Lauren you can't wear that color pink it makes me hot. Everyone knows this;"

    d. Kreisher stating "If I were a younger man, it would be hard to stay away from you because you're just my type;"

    e. Kreisher would rub his legs and offer that Lauren could sit on his lap;

    f. Public Works employees, incuding, but not limited to, Dave Eyer would refer to Lauren as "a dumb bitch," discuss her breast size and make comments about wishful sexual interactions;

    g. Public Works employees would stalk her by parking outside Lauren's home and watching her; and

    h. After a breast reduction surgery, male employees commented "Why would you do that?"

39. Other female Town employees experienced harassment at the hands of male employees including, but not limited to, Heather Jacoby, Christine Meeker, Tracy Lanzafame, Kim Pogash, Lisa Dooley and BJ Teichman.

40. Lauren reported her concerns to various people, including, but not limited to:

    a. The Human Resources Director who discussed the issues with Council members but no action was taken;

    b. William Lowthert about the Public Works employees stalking her which required the intervention of the Chief of Police to stop the stalking;

    c. Council Members who took no action, instead trying to assure her that "Bill is just teasing, you know how he can be;"

    d. The Administrative/Finance Committee[2] as a part of her self-evaluation which called for Lauren to describe "My three biggest frustrations in my job are" to which Lauren replied (i) When people do not understand what my job is and what it entails: daily, weekly, monthly. (ii) Not having enough resources; money, staff, training, time, etc. (iii) *Being*

---

[2] Administrative Finance Committee is a four member committee comprised of three Council members and the Mayor.

*treated differently due to my sex and age*. Ultimately, no one at the Administrative Finance Committee did anything to address Lauren's frustration about "being treated differently due to my sex and age."

    e. Kreisher allowed disrespectful and derogatory actions of Police Officers Golla towards Tracy Lanzafame and Leonard Rogutski towards staff and council at a public council meeting. Kreisher then said to Lauren "what do you want me to do Lauren? The Police Department is my voting base."

    f. At an Admin/Finance meeting Lauren questioned spending in the Police Department, which was part of her responsibilities, and was ridiculed in front of staff members by Kreisher who stated that Lauren "didn't understand what they needed."

41. Defendant has harbored a hostile work environment for females including Lauren due to their inaction and their breach of duty to investigate with respect to the various complaints and the hostile work environment Lauren was subjected to regularly by her co-workers and Council Members.

42. Defendant harbored a hostile work environment based on their sexual harassment of Lauren due to their failure to take action to attempt to rectify the complaints of harassment, hers and of others, when she made Defendant and their agents aware of it.

43. Defendant's workplace was permeated with discriminatory intimidation, ridicule, disparate treatment and insult, and is sufficiently severe or pervasive to alter the conditions of Lauren's employment and create an abusive working environment.

44. Defendant failed to take prompt and adequate remedial measures to prevent and correct the harassing and discriminatory behavior of its employees and Council Members.

45. The Defendant engaged in such discriminatory conduct intentionally, willfully, and in disregard of the rights of Lauren.

46. As a result of Defendant's unlawful discriminatory practices in violation of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act, Lauren suffered a tangible employment action – her termination.

47. Lauren suffered harm and damages, including lost pay and benefits, compensatory damages and injury.

48. By participating in and/or causing the negative working conditions and the above-described adverse workplace actions, Defendant violated Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act.

49. Defendant's violations of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act were wanton, willful and malicious.

50. As a result of Defendant's willful violations of Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act, Lauren has suffered damages, including loss of reputation, loss of pay and benefits, loss of future income and growth opportunities, damage to her career, severe stress and anxiety, loss of happiness and well-being, and other emotional distress and compensatory damages.

51. Defendant engaged in the conduct as fully set forth above and incorporated herein by reference with malice and/or intentional indifference to Lauren's statutory civil rights protected by federal and state law.

52. The acts complained of were extreme and outrageous and were engaged in with malice and/or reckless indifference to Lauren's well-being, thereby entitling her to punitive damages.

53. Thus, Defendant willfully violated Title VII of the Civil Rights Act and the Pennsylvania Human Relations Act when they subjected Lauren to a severe and/or pervasive hostile work environment because of her sex and are liable to Lauren for monetary, compensatory and punitive damages, along with attorneys' fees and costs.

## COUNT - THREE
## RETALIATION UNDER PENNSYLVANIA HUMAN RELATIONS ACT
## and
## TITLE VII OF THE CIVIL RIGHTS ACT

54. Paragraphs 1 through 53 are incorporated herein by reference as though set forth in their entirety.

55. As stated in Count II, Lauren experienced and reported inappropriate behavior while employed with the Town of Bloomsburg.

56. At various times, Lauren, in doing her job as Town Manager, pointed out ways the Council was violating the law which often resulted in angst between Lauren and Council. Those include, but are not limited to:

   a. Advancing complaints about gender discrimination;

   b. Advancing concerns about discrimination in the Town's hiring process;

   c. Complaining about Council Members meeting with Town employees privately in violation of the Town Manager Ordinance;

   d. Complaints about Town funds being uses inappropriately;

   e. Complaints about Town assets being uses inappropriately;

   f. Advising Council that there was unaccounted for fuel missing from the Public Works gas tanks as well as questioning the legality of their placement. Eventually, the fuel usage was controlled by fuel cards;

   g. Questioning the hiring practices of the Town noting the lack of minorities in certain departments; and

    h. Failing to support her decisions regarding operating the Town

    i. Lauren was investigating complaints of one Public Works employee against another Public Works employee and it was explained to Public Works Director, John Fritz that the hiring for an additional employee was on hold temporarily until the investigation was completed. John Fritz worked to circumvent Lauren's authority by going to a Council Member to hire someone in spite of Lauren's response. Council Member Toni Bell began to use "back channels" to try to hire a specific employee in direct violation of the Town Manager Ordinance.

57. Lauren had a right to advise and complain to the Council about the conduct which Lauren believed was discriminatory or otherwise illegal.

58. Council Members would ignore Lauren's complaints and allow discriminatory conduct to persist.

59. Less than four months after Lauren's self-evaluation where she placed the Administrative Finance Committee on written notice that she was "being treated differently due to my sex and age," Lauren was terminated.

60. It is believed, therefore averred that as a direct result of Lauren engaging in the protected activity, i.e. advancing complaints and concerns on behalf of Town employees and herself, the Council took adverse action against Lauren.

61. The adverse treatment Lauren received was based on Council's discriminatory and/or retaliatory motive.

62. Lauren's dismissal was a retaliatory act for Lauren engaging in her protected right to bring attention to actions which were illegal or discriminatory.

63. Lauren's dismissal was a retaliatory act for Lauren engaging in her protected right to lodge a complaint or concern on behalf of other employee of the Town, including herself, without recrimination.

64. Instead, Lauren's actions were seen as "rocking the boat" of the "good ole boys' network" within the Town.

65. Lauren's dismissal was a retaliatory act as evidenced by her interactions with Council and its Members.

66. The retaliatory action taken against Lauren by the Defendant was materially adverse to Lauren and her career.

67. The termination of Lauren was a calculated method by the Defendant to deter her or anyone like her from taking any additional steps to engage in protected activity.

68. Based upon the foregoing, Lauren alleges that Defendant has violated the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951-963 and the anti-retaliation provision of Title VII of the Civil Rights Act of 1964.

## COUNT - FOUR
## WRONGFUL DISCHARGE

69. Paragraphs 1 through 68 are incorporated herein by reference as though set forth in their entirety.

70. It is settled law that if the discharge of an at-will employee threatens public policy, the employee may maintain a cause of action against the employer for wrongful discharge. *See Yaindl v. Ingersoll-Rand Company*, 281 Pa. Super. 560, 572, 422 A.2d 611, 617 (1980).

71. Public policy sources which limit employers' right of discharge include administrative rules, regulations, or decision; and judicial decisions. *See Cisco v. UPS*, 328 Pa. Super. 300, 306 (Pa. Super 1984).

72. In this case, Lauren was fired for exercising her right and/or duty to engage in protected activity and treated differently than male employees in similar circumstances.

73. The termination of Lauren's employment was in violation of the public policy of the Commonwealth of Pennsylvania.

74. As a result of the aforesaid reckless, deliberate, willful and wanton tortious acts by the Defendant, Lauren sustained damages.

**WHEREFORE**, the Plaintiff requests this Honorable Court to enter judgment in her favor and against the Defendant for:

1. This Court declare that the practices in which the Defendant has engaged are retaliatory, discriminatory and in violation of law;

2. This Court to order the Defendant to pay to the Plaintiff back pay and benefits;

3. This Court to order the Defendant to pay to the Plaintiff front pay and benefits;

4. This Court to order the Defendant to pay to the Plaintiff statutory prejudgment interest;

5. This Court to order the Defendant to pay to the Plaintiff compensatory damages;

6. This Court to order the Defendant to pay to the Plaintiff reasonable costs and attorney fees; and

7. And any other relief that this Court deems just and equitable.

Respectfully submitted,

**LAW OFFICES OF PETER J. RUSSO. P.C.**

Date: September 22, 2022      By:   /S/   Peter J. Russo
Peter J. Russo, Esquire
Attorney I.D. No. 72897
245 Grandview Avenue, Suite 102
Camp Hill, PA 17011
Attorney for Plaintiff